UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

_____ )
FAVORITE  HEALTHCARE )
STAFFING, INC. )                    CIVIL ACTION NO.
 )
      Plaintiff, )                    _____
 )
      v. )
 )
TACKL-IT, LLC, CURTIS FAIRCLOTH )
KELLIE HUFF a.k.a KELLIE R. HETZEL )        **COMPLAINT**
LAUREN HETZEL )
 )
      Defendants )
 )

## INTRODUCTION

Plaintiff initiates this action against the Defendants in order to collect

damages for monies owed for i) breach of an employment agency service contract

for temporary health care professional services rendered to the Corporate

Defendant, ii) recovery of the quantum meruit value of said employment agency

services delivered and received, iii) piercing of the corporate veil of the Corporate

Defendant in order to hold the principals of the corporate entity personally liable

for Corporate Defendant's debt obligation to Plaintiff and iv) recovery from the

principals of the Corporate Defendants the amount of those distributions received

from the Corporate Defendant during the period of time the Corporate Defendant was unable to pay its debt obligations to Plaintiff.

## PARTIES

1.     Favorite Healthcare Staffing, Inc. ("Plaintiff" and/or "Favorite Healthcare") is a corporation duly organized and operating pursuant to the laws of the State of Kansas with a principal place of business in Overland Park, Kansas and is in the business of providing qualified temporary health care personnel to hospitals, nursing homes, rest homes and other medical facilities throughout the United States. Pursuant to Favorite Healthcare's standard terms and conditions of service contracting parties have the option to transform temporary healthcare professionals provided by Favorite Healthcare to permanent employees of the contracting party upon the payment of specified employment agency fees.

2.     Defendant, Tackl-It, LLC, d.b.a. Tackl Health ("Tackl" and/or "Corporate Defendant") is a limited liability company duly organized and operating pursuant to the laws of State of Georgia with a current principal place of business located at 200 Commercial Ct., Suite C, Savannah Georgia and is in the business of conducting covid 19 testing services.

3.      Defendant Curtis Faircloth ("Faircloth") is an individual and the Chief

Executive Officer and a principal of the Corporate Defendant. He resides at 12300

Apache Ave., Apt. 924 in Savannah, GA.

4.      Kellie Huff a.k.a. Kelly Hetzel ("Huff") is an individual and Vice President,

Registered Agent and a principal of the Corporate Defendant. She resides at 20 E.

56th St., Savannah, GA.

5.      Lauren Hetzel is an individual ("Hetzel") and Director and a principal of the

Corporate Defendant. She resides at 180 Jackson St. NE., Apt. 3510, Atlanta GA.

(Tackle, Faircloth, Huff and Hetzel hereinafter collectively the "Defendants")

## JURISDICTION

6.      This matter involves damages in excess of $75,000.00 arising from a dispute

between citizens of different states. Accordingly, this Court has jurisdiction

pursuant to 28 U.S.C. § 1332.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

8.      In December, 2020 Tackl executed Favorite Healthcare's standard terms and

conditions of service contract ("Staffing Agreement"). A copy of said Staffing

Agreement is attached hereto and marked as Exhibit "A".

9.      Pursuant to the terms and conditions of Exhibit "A" Favorite Healthcare,

between December, 2020 and August, 2021, provided temporary health care

professionals to Tackl for its use at the Cleveland Hopkins Airport in Cleveland, Ohio. Favorite Healthcare submitted various invoices to Defendant between December, 2020 and August, 2021 which Tackl failed, refused and neglected to pay. The temporary healthcare professional services provided by Favorite Healthcare to Tackl were accepted by the Corporate Defendant and benefited Faircloth, Huff and Hetzel.

10.    Favorite Healthcare tendered invoices requesting payment for services rendered to Tackl for the period December, 2020 through August 6, 2021 totaling $78,397.94 ("Balance Due"). On September 3, 2021 Favorite Healthcare made written demand for payment of the Balance Due. Said demand was sent by certified and regular mail. Despite said demands Tackl has failed, refuse and/or neglected to make payment on any of said invoices and there remains due and owing to Favorite Healthcare an outstanding balance of $78,397.94. A summary of the invoices tendered to Tackl is attached hereto and marked as Exhibit "B".

11.    Tackl's acceptance of Favorite Healthcare's provision of temporary healthcare professionals and its execution the agreements contained in Exhibit "A" are all admissions of fact that the Corporate Defendant has expressly and/or impliedly agreed to the terms and conditions contained in Exhibit "A" and Favorite Healthcare's standard terms and conditions of service. Pursuant to the terms and

conditions contained in Exhibit "A", Plaintiff is provided the right to collect the reasonable cost of collection, including but not limited to, its attorney's fees.

12.     Defendant has received, accepted and benefited from Favorite Healthcare's provision of temporary healthcare professionals without paying the fair market value for said services. The reasonable value of the services rendered to and accepted by Tackl is $78,397.94. Despite demand, Tackl has failed to pay to the Plaintiff the reasonable value of the services rendered to and accepted by the Tackl.

13.     None of the Defendants have raised defenses, claims of setoff, breaches of warranty or any counterclaims to Favorite Healthcare's assertion that it is owed the Balance Due.

14.     Corporate Defendant's business model is to render covid-19 testing services through "pop up" workstations at the Cleveland Hopkins Airport in Cleveland, Ohio and various locations throughout the country. Said business model using "pop up" stations, which are literally nothing more than collapsible tents, requires minimal capitalization. The primary cost for Tackl to conduct its business is paying the staff rendering said testing services, which in the present case were all paid for by Plaintiff. Upon information and belief Tackl has used other healthcare staffing services to render its testing services at other locations.

15.     At the time of formation of the LLC entity Tackl, the individual Defendants knew that their primary cost of conducting business would be paying the staff needed to render testing services. Defendants intentionally undercapitalized Tackl so it did not have funds to pay the staff conducting testing services so as to improperly avoid the future debts of the LLC such as that owed to Plaintiff.

16.     Tackl did not and has not registered to do business with the Ohio Secretary of State's office. Said failure to registered to do business was, upon information and belief, and attempt to avoid any minimum capitalization requirements established by the state of Ohio.

17.     In addition to failing to pay a single invoice for more than eight months, Tackl has failed to respond to a single email or voicemail from Plaintiff regarding the payment of the Balance Due. The facts set forth in paragraphs 14, 15, and 16 herein evidence that all of the Defendants intended to use the corporate LLC entity as a vehicle to commit fraud as against Plaintiff and avoid contractual responsibility to Plaintiff.

18.  Upon information and belief, Tackl and Faircloth, Huff and Hetzel have caused the issuance of corporate distributions to Defendants Faircloth, Huff and Hetzel during a  period of time that Tackl was unable to pay its just debts to Plaintiff in violation of O.C.G.A. §14-11-407(a).

## COUNT I
## (BREACH OF CONTRACT v. CORPORATE DEFENDANT)

19.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 18 above.

20.    Defendant by failing to pay the Plaintiff $ 78,397.94 has breached the terms and conditions of both the invoices tendered and the contract provisions contained in Exhibit "A".

21.    As a result of said breach, the Corporate Defendant owes the Plaintiff $78,397.94 and further accrued interest and attorney's fees in an amount to be established at trial of this matter.

22.    Plaintiff gives Defendant notice that unless the amount prayed for herein is paid in full within ten (10) days of Defendant's receipt hereof, Defendant will be responsible for Plaintiff's reasonable attorney's fees in the amount of 15% of the first $500.00 and 10% of the remaining amount presently due and owing pursuant to O.C.G.A. § 13-1-11.  By paying the entire amount presently due and owing with ten (10) days of their receipt hereof, Defendant may avoid the obligation to pay Plaintiff's attorney's fees.

## COUNT II
## (QUANTUM MERUIT v. CORPORATE DEFENDANT)

22.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 21, above.

23.    The reasonable value of the staffing services provided to and accepted by the Corporate Defendant is equal to or in excess of $78,397.94.

24.    As a result of the Plaintiff's provision of employment agency services to the Defendant, the Corporate Defendant has received a material benefit, has been unjustly enriched and is obligated to Plaintiff in the amount of $78,397.94.

**COUNT III**
**(PIERCING CORPORATE VEIL v. DEFENDANTS TACKL, FAIRCLOTH,**
**HUFF & HETZEL)**

25.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 24, above.

26.    Defendants Tackl, Faircloth, Huff and Hetzel have intentionally undercapitalized Tackl and used the LLC corporate veil of Tackl to perpetrate a fraud as against the Plaintiff and avoid the contractual responsibility to pay Plaintiff the Balance Due.

27.    Plaintiff prays this Court disregard the separateness of the LLC corporate entity because the Defendants have used the corporate entity to attempt to defeat justice, perpetrate a fraud and avoid contractual responsibility to the Plaintiff.

28.    As a result of piercing the corporate veil of the LLC entity, Defendants Faircloth, Huff and Hetzel, who owned, operated and benefited from operating

Tackl, should be held individually and jointly and severally liable for the Balance Due to Plaintiff.

## COUNT IV
## (RECOVERING FROM DEFENDANTS FAIRCLOTH, HUFF & HETZEL DISTRIBUTIONS RECEIVED IN VIOLATION OF GEORGIA LAW)

29.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 28, above.

30.     O.C.G.A. §14-11-407(a) provides that no distributions may be made by an LLC that either render the LLC unable to pay its debts or alternatively reduces the value of its assets below the amount of its liabilities.

31.     Upon information and belief, Defendants Faircloth, Huff and Hetzel received payments from the Corporate Defendant that were not taxable wages and therefore constitute distributions. Said distributions should be recovered from Defendants Faircloth, Huff and Hetzel and segregated and held in trust so that the same may be used to satisfy the Corporate Defendant's obligation to Plaintiff for the Balance Due.

## COUNT V
## (RECOVERING FROM ALL DEFENDANTS

32.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 31, above.

33.   At all times pertinent hereto, the Defendants have acted in bad faith, been stubbornly litigious, and have caused the Plaintiff unnecessary trouble and expense.

34.   Plaintiff is entitled to recover its reasonable expenses of litigation, including its attorney's fees pursuant to O.C.G.A. §13-6-11.

### PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that:

1)  Pursuant to Count I, this Court enter Judgment against the Corporate Defendant in the amount of $78,397.94 plus pre-judgment interest at 18% per annum pursuant to O.C.G.A. § 7-4-16, plus attorney's fees as provided in O.C.G.A. §13-1-11, costs, and  that execution or other appropriate process issue for the enforcement of same; and

2)  Pursuant to Count II, this Court enter Judgment against the Corporate Defendant in the amount of $78,397.94 plus interest, costs, and attorneys' fees and that execution or other appropriate process issue for the enforcement of same; and

3)  Pursuant to Count III, this Court enter Judgment piercing the corporate veil of the Corporate Defendants and determining that Defendants Faircloth, Huff and Hetzel, who owned, operated and benefited from operating Tackl, are individually and jointly and severally liable to the Plaintiff in the amount of

$78,397.94 plus interest, costs, and attorneys' fees and that execution or other appropriate process issue for the enforcement of same; and

4)  Pursuant to Count IV, this Court enter Judgment recover from Defendants Faircloth, Huff and Hetzel any distributions received by them and that the same be segregated and held in trust to be used to satisfy the Corporate Defendant's obligation to Plaintiff for the Balance Due plus interest, costs, and attorneys' fees and that execution or other appropriate process issue for the enforcement of same; and

5) Pursuant to Count V, this Court enter Judgment as against all the Defendants in the amount of Plaintiff's reasonable expenses of litigation, including its attorney's fees pursuant to O.C.G.A. §13-6-11.

6) For any such other and further relief as this Court deems just and proper.

Respectfully submitted this 4th day of October, 2021.


HAYS POTTER & MARTIN, LLP

_____/s/ James W. Hays

3945 Holcomb Bridge Rd.          James W. Hays
Suite 300                        Attorney for Plaintiff
Peachtree Corners, GA  30092     Georgia Bar No: 340910
(770) 934-8858
beau@hpmlawatl.com


and

/s/ David J. Noonan, Esq.
32 Tanglewood Road
Amherst, MA  01002
(413) 549-5491
noonan@law-djn.com
Mass BBO # 373260
Admission Pro Hac Vice Pending

# EXHIBIT "A"



This Rate Schedule, effective 12/12/2020, applies to Tackl Health located at 20 E. 56th Street, Savannah, GA 31405 ("Client").

## DEFINITIONS

A. <u>THP</u> is a temporary healthcare professional working as an employee of Favorite on assignment at Client.

B. <u>Per Diem THP</u> is any THP not regarded as a Traveler under this agreement.

C. <u>Traveler</u> is any THP provided by Favorite for whom a Confirmation of terms of an assignment of not less than 4 weeks in duration has been made by Client.

D. <u>Confirmation</u> is the Client's written acceptance of a particular Traveler to fill a specific Client need.

## 1. RATES

Rates are subject to change with a written notice.

| Classification | Hourly Bill Rate |
|---|---|
| LPN | 51.00 |
| CNA / STNA | 29.00 |
| Temperature Screeners | 29.00 |
| All Classifications – On Call | 8.00 |

*All other classifications can be negotiated upon need.

| On-Call | When THP / Traveler is called in, Client will be billed at 1.50 of the regular hourly rate for hours worked.  Minimum call back is four (4) hours. |
|---|---|

## 2. OVERTIME

Work week begins Saturday at 7:00 AM.  Weekend rates begin Friday at 3:00PM and end Monday at 6:59AM.  Overtime rates will apply as indicated by local labor statute.

| Hours in Excess of: | Per: | Overtime Multiplier: |
|---|---|---|
| 40.00 | Week | 1.50 |

## 3. HOLIDAYS

The following holidays will be charged at 1.5 times the regular rate:

| HOLIDAY | SHIFTS |
|---|---|
| Thanksgiving Day Eve | 11-7 |
| New Year's Eve; Christmas Eve | 3-11, 11-7 |
| Easter Day; Thanksgiving Day | 7-3, 3-11 |
| New Year's Day; Memorial Day; July 4th; Labor Day; Christmas Day | 7-3, 3-11, 11-7 |

7255 W. 98TH TERRACE-BLDG.5, SUITE 150 ● OVERLAND PARK, KS 66212-2215 ● PHONE 800-676-3456 ● FAX 888-870-6530
www.favoritestaffing.com

Tackl Health Loc. 42

Page 1 of 3

12/15/2020

4. **CANCELLATIONS**

    A. <u>Per Diem</u>
    Minimum billing rate once supplemental personnel have started to work is 4.00 hours.

    Client may cancel 2.00 hours prior to the start of the shift.  If Client cancels with less than a 2.00 hour notice, Favorite will bill for 2.00 hours at the regular hourly rate.

    B. <u>Travel/Contract</u>
        1. Client may cancel an assignment prior to starting with a two (2) week prior written notice. If Client gives less than a two (2) week prior notice, Favorite will bill Client for one (1) week at the appropriate bill rate.

        2. In the event Client finds it necessary to terminate a Contract THP's assignment during the assignment, for no fault of Favorite or Contract THP, the Client shall reimburse Favorite for one (1) week at the appropriate bill rate, and for all contractual obligations for transportation and housing incurred as a result of Favorite's placement of Contract THP with Client.

        3. Client acknowledges that a reimbursement or other expense allowance arrangement exists between the parties with respect to housing and meals paid to healthcare professionals who are on travel assignments.  Favorite will provide a statement to Client on an annual basis of the reimbursement amount which may be subject to tax deduction limitations.

5. **SCOPE OF ASSIGNMENT**

    A. THP will not be diagnosing or providing medial opinions.

    B. Client is responsible for decision to send Client employees home.

    C. THPs are not responsible for storing or transporting specimens.

6. **OTHER**

    A. <u>Orientation</u>
    Favorite will bill Client the regular hourly rate.

    B. All THP bonuses provided by Client are subject to deductions for payroll burden and miscellaneous expenses.

    C. Unless otherwise agreed upon in writing, Favorite's <u>*Standard Terms and Conditions of Service and Standard Hiring Practices*</u>, shall apply and are published at <u>www.favoritestaffing.com</u>.  All of these current Terms and Conditions have already been incorporated into this agreement.

    D. This Agreement may be modified or amended by written agreement and supersedes all prior Agreements of the parties.

    E. In the event services are provided to Client by Favorite, and this agreement is not signed, Client's acceptance of our services will be deemed as acceptance of the terms of this agreement.

*Favorite and CLIENT agree that rates will be reviewed annually and will be subject to incremental adjustments at a minimum rate in accordance with the current Consumer Price Index.  Such adjustments shall apply when applicable as an offset to increasing overhead costs attributable to expenses such as*

*but not limited to: payroll taxes, workmen's compensation, unemployment expenses, health benefits, meals/incidentals and lodging, etc.  Rate adjustments will be provided with a written notice, and agreed upon by mutual written agreement.*

### D.  SIGNATURES

**Favorite Healthcare Staffing, Inc.
("Favorite")  42**

**By:** _____

<u>Authorized Signatures:</u>
  Debra MacLeod, RN, Senior Vice President
  Christopher Brink, President
  Paul Brown, Vice President
  Keenan Driver, Vice President
  Corey Shepard, Vice President
  Michael Bellari, Vice President
  Stephanie Render, Regional Director

**Date:** _____

**Tackl Health
("Client")**

**By:** _____

**Name:** _____
                        Please Print

**Title:** _____

**Date:** _____



**Favorite** Healthcare Staffing

Joint Commission Health Care
Staffing Services Certification



## STANDARD TERMS AND CONDITIONS OF SERVICE

This document describes the standard terms and conditions for the provision of services by Favorite Healthcare Staffing, Inc. to its clients. In the event that any of these terms and conditions conflict with other arrangements agreed upon in writing or stated in a Favorite Healthcare Staffing, Inc. agreement or rate schedule, such other terms and conditions shall apply. Changes to these standard terms and conditions of service may occur from time to time and will be published at the www.favoritestaffing.com public website and can be found by going to "MENU", "CLIENT SERVICES".

### DEFINITIONS

A. THP is a temporary healthcare professional working as an employee of Favorite on assignment at Client.

B. Per Diem THP is any THP not regarded as a Traveler under this agreement.

C. Traveler is any THP provided by Favorite for whom a Confirmation of terms of an assignment of not less than 4 weeks in duration has been made by Client.

D. Confirmation is the Client's written acceptance of a particular Traveler to fill a specific Client need.

### The Responsibilities of Favorite Healthcare Staffing, Inc.:

It is Favorite Healthcare Staffing, Inc.'s responsibility to:

1. Provide services in conformance with all Joint Commission standards applicable to Health Care Staffing Services.

2. Provide service coordinator staff on a 24 hour per day, 365 day per year basis to receive and process service requests and changes.

3. Match client service requests with Temporary Healthcare Personnel (THPs) who are properly screened and qualified in accordance with our standard hiring practices.

4. Provide clients, upon request, with documentation of the skills and qualifications of assigned personnel, either via e-mail or facsimile.

5. Instruct all THPs to always carry on their person an original license, evidence of current CPR and any applicable specialty certifications, for immediate client inspection.

6. Assume sole responsibility as the employer of record for the payment of wages to THPs and for the withholding of applicable federal, state and local income taxes, the making of required Social Security tax contributions, and the meeting of all other statutory employer responsibilities (including, but not limited to, unemployment and worker's compensation insurance, payroll excise taxes, etc.).

7. Comply with federal, state and local labor and employment laws applicable to Assigned Employees, including the Immigration Reform and Control Act of 1986; the Internal Revenue Code ("Code"); the Employee Retirement Income Security Act ("ERISA"); the Health Insurance Portability and Accountability Act ("HIPAA"); the Family Medical Leave Act; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act; the Fair Labor Standards Act; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Uniformed Services Employment and Reemployment Rights Act of 1994; as set forth in subparagraph h. below, the Patient Protection and Affordable Care Act (ACA); and the Occupational Safety and Health Act of 1970.

8. Comply with all provisions of the ACA applicable to Assigned Employees, including the employer shared responsibility provisions relating to the offer of "minimum essential coverage" to "full-time" employees (as those terms are defined in Code §4980H and related regulations) and the applicable employer information reporting provisions under Code §6055 and §6056 and related regulations.

9. Maintain a system documenting, tracking, and reporting unexpected incidents, including errors, unanticipated deaths and other events, injuries, and safety hazards relating to the care and services provided. (It is the Clients' responsibility to promptly notify Favorite Healthcare Staffing within 24 hours of when an incident occurs. Upon notification, Favorite Healthcare Staffing will then implement incident tracking/resolution processes and communicate with the client as needed.) Client may be required to provide written documentation to Favorite to facilitate the investigation and potential corrective actions of incidents. Depending on the severity of the incident; Favorite will also have our Risk Oversight Committee review and make recommendations.

10. Maintain general liability insurance and professional liability insurance with limits equal to or greater than $1,000,000 per occurrence and $3,000,000 aggregate. Maintain workers compensation in the amounts mandated by law in the state or states in which services are being performed. Favorite will provide certificates of insurance on request.

11. May use subcontractors in the usual course of providing staffing services.

12. Not discriminate in employment with respect to race, religion, sex, creed, disability or national origin in compliance with all applicable laws including Title VII of the Civil Rights Acts of 1964, or any of its amendments, and the Americans with Disabilities Act.

13. Comply with Section 1861(v) of the Social Security Act, and, therefore, for a period of four years, make available upon written request such books, documents and records as are necessary to certify the nature and extent of the cost of providing services.





Joint Commission Health Care
Staffing Services Certification

## STANDARD TERMS AND CONDITIONS OF SERVICE

**The Roles/Responsibilities of Client:**

1. Make final determination of the suitability of THP documented competencies and experience as presented by Favorite Healthcare Staffing, Inc. for the designated assignment.

2. Provide orientation which, at minimum, includes the review of policies and procedures regarding medication administration, documentation procedures, patient rights, Infection Prevention, and Fire and Safety, OSHA and EMR/Charting (if applicable).

3. Manage Favorite Healthcare Staffing, Inc.' THPs consistent with their own policies and procedures and address any incident consistent with those policies and procedures.   Promptly notify (within 24 hours) Favorite Healthcare Staffing, Inc. by written documentation of any unexpected incidents, errors and sentinel events that involve THPs and of any occupational safety hazards or events that involve THPs.

4. Recognize Favorite Healthcare Staffing, Inc.' policy regarding the floating of staff whereby THPs are instructed not to accept a floating assignment if they do not have the skills required to perform a competent level of care.

5. Assist Favorite Healthcare Staffing, Inc. with the periodic evaluation (no less than annually) of THP job performance. Travelers will be evaluated after each assignment.

6. If applicable, when advanced practice services are requested (NPs and/or PAs), it is the responsibility of the CLIENT to have an executed copy of the Collaborative Agreement between the advanced practice personnel and the collaborating physician.

7. Promptly notify (within 24 hours) Favorite Healthcare Staffing, Inc. by written documentation of any unsatisfactory job performance or action taken to terminate the services of a THP due to incompetence, negligence, or misconduct.  In such event the client shall only be obligated to compensate Favorite Healthcare Staffing, Inc. for actual time worked by the THP.

8. If unable to resolve a problem or complaint at the branch or department level, please refer to our Client Grievance Policy located on our website at www.favoritestaffing.com for instructions on how to submit a grievance to Favorite or to report concerns to The Joint Commission.  Client may submit a grievance in writing to the corporate office by mail or by email to clientcomments@favoritestaffing.com or by calling our corporate office Human Resources/Quality Assurance Director at 800-676-3456.

9. Provide at least two hours' notice of any cancellation of assignment or accept responsibility for payment of two hours of service at the applicable rate for Per Diem shifts.  Travelers should not be cancelled unless rescheduled within the same week. Minimum billing once THP has started to work a four (4) hour or greater assignment is 4 hours.

10. Timely and accurately approve THP's time via Favorite's Timecard Mobile App. THP will provide the shift information via mobile phone to the Client and Client will review, approve and sign on the THP's mobile phone. Once a THP's timecard has been approved it will be submitted to Favorite Healthcare electronically and an email confirmation will be sent to the Supervisor if they choose to receive one. Weekly invoices will include a copy of the Supervisor's signature along with the approval details for each shift. A copy of our Timecard Mobile App Instructions can be found on our website at www.favoritestaffing.com for Client's convenience and reference.  If the Client requires the THP to provide additional information such as nursing notes, narratives, etc., the Client approval acknowledges the receipt of such additional information.

11. Remit payment for services directly to Favorite Healthcare Staffing, Inc. upon receipt of invoice, **no later than 30 days**. In the event the client questions any amounts invoiced, an explanation of any items in question must be received by Favorite Healthcare Staffing, Inc.' Accounts Receivable department within 15 days.  This notification must be made by one of the following means:

    | | |
    |---|---|
    | By telephone: (800) 676 – 3456 | By U.S. mail to: |
    | By fax:          866-291-1511 | |
    | By e-mail:   accountsreceivable@favoritestaffing.com | Favorite Healthcare Staffing, Inc. |
    | | Attn.: Accounts Receivable |
    | | 7255 W. 98th Terr., Suite 150 |
    | | Overland Park, KS 66212 |

12. Pay interest equal to the annual maximum allowable by state law, plus cost and disbursements, including reasonable attorney and/or collection fees, incurred in the collection of the client's account in the event client fails to remit payment within 30 days from the invoice date.

13. To help offset the additional administrative and compliance costs attributable to the Affordable Care Act, an ACA surcharge will be applied at a minimal cost of $0.35 per hour for the total hours billed on each invoice as a separate line item for the services we provide to your facility. This minimal cost is to cover the expenses of compliance and avoid any concerns by our clients that they may be liable under co-employment laws.  We are committed to being fully compliant with ACA to give our clients peace of mind. We feel the surcharge will make for ease of implementation with the least amount of complication. Our goal is that the surcharge will have minimal impact on your facility.



Joint Commission Health Care
Staffing Services Certification

# STANDARD TERMS AND CONDITIONS OF SERVICE

**The Roles/Responsibilities of Client Cont'd:**

14. **Flipping.** During the term of this Agreement, if, and to the extent that, any THP whose profile is submitted by Favorite to Client and is working at Client's facility for Favorite, Client agrees that it will not, and will cause its affiliates not to, interfere with the business of Favorite by inducing that candidate to become employed by any other party at Client's facility (e.g. no "flipping").

15. Client will not hire a per diem or travel THP from Favorite 12 months from their last worked shift at Client facility. If the 12-month period is not honored, Favorite will invoice for a conversion fee based on the Temp-to-Perm conversion fee schedule.

**These terms shall apply unless this right is specifically protected in accordance with state and/or local law.** (In accordance with the MN Statute 144A.72 Favorite will not, in any MN contract, with any MN employee or MN health care facility, require the payment of liquidated damages, employment fees, or other compensation should the employee be hired as a permanent employee of a health care facility. *The following Direct Hire/Temp to Perm terms will apply for all allied personnel and/or personnel not providing "direct patient care"; excluding clinical RNs, LPNs, and CNAs in the State of Minnesota)*

**The Following Policy and Fee Schedule Shall Apply to Direct Hire Placements:**
The direct hire fee shall be equal to the following percent of the candidate's <u>first year's annualized salary</u> for any candidate presented to Client by Favorite who accepts a position with any clinic, group, healthcare facility or organization owned, operated, or affiliated with Client whether or not in Client's actual local community. Salary amount will be listed on the employment letter for the candidate. In the event Favorite submits a candidate that has been in Client's database, but has not been contacted by Client within 45 days, the candidate is considered eligible to be presented through Favorite.

| Position Level | Job Specification | Direct Hire Fees |
|---|---|---|
| Staff Position | Registered Nurse, Licensed Practical Nurse, Certified Nursing Assistant, Case Manager, Charge RN, Health Informatics | 18% |
| Mid-Level | Nurse Practitioner, Physician Assistant, Department Manager/Director | 20% |
| Executive Level | Director of Nursing, VP Operations and C-Level Healthcare Personnel | 25% |
| Physicians | | $20,000 |

A. **Client agrees to make payment to Favorite in the following manner:**
   i.   Client will be invoiced upon confirmation of placement for each candidate.
   ii.  Full payment of the direct hire fee will be due to Favorite upon receipt of the invoice date.

B. **Direct Hire Guarantee:**
The Direct Hire Guarantee will apply if payment is received within ten (10) days of the date on the invoice. In the unlikely event that the client is unsatisfied with a candidate provided by Favorite prior to completion of ninety (90) days of the start date the client may choose to end the candidate's employment. Favorite will work with Client to replace the candidate, or Client will be issued a credit on a replacement as follows:

   0 – 30 days    75% credit
   31 – 60 days   50% credit
   61 – 90 days   25% credit

   i.   No replacement will be offered in the event of layoff, a substantial change in the original job description, or elimination of the position.
   ii.  Credits may be used immediately or within twelve (12) months beginning at the termination date. A credit may be used for the original candidate search; any deviation from this will need to be approved in advance by Favorite.
   iii. Client will not directly hire a candidate from Favorite or another staffing agency for 12 months from when Favorite initially presented the candidate for hire. If the 12-month period is not honored, the full Direct Hire Fee's associated above shall apply.
   iv.  If applicable, and if/when advanced practice services are requested (NPs and/or PAs), it is the responsibility of the CLIENT to have an executed copy of the Collaborative Agreement between the advanced practice personnel and the collaborating physician.

C. **Temp-to-Perm Option:**
A Temp-to-Perm position will include a temporary hourly bill rate and a reduced permanent placement (conversion) fee upon the successful completion of the temporary portion of the assignment based on the fee schedule as shown below. Full payment of the placement fee and invoices for services prior to conversion are due within 30 days of the Temporary Healthcare Professional's start date as an 'employee' of the client. These terms shall apply unless this right is specifically protected in accordance with state and/or local law.

| Hours Worked at Facility Through Favorite: | | Permanent Placement Fee: |
|---|---|---|
| 0-249 | = | 100% of Direct Hire Fee |
| 250-579 | = | 75% of Direct Hire Fee |
| 580-1079 | = | 50% of Direct Hire Fee |
| 1080+ | = | 25% of Direct Hire Fee |





Joint Commission Health Care
Staffing Services Certification

**Joint Commission**
The Joint Commission standards under which Favorite is certified relate to quality and safety of care issues as impacted by Favorite's temporary healthcare professionals. Anyone believing that he or she has pertinent and valid concerns about such matters should report these to the management of Favorite Healthcare Staffing either at the branch office or the corporate office (please see our web site at www.favoritestaffing.com for contact information). If the concerns cannot be resolved through Favorite, the individual is encouraged to contact The Joint Commission.

| | | |
|---|---|---|
| Phone: | 800-994-6610 | |
| E-Mail: | patientsafetyreport@jointcommission.org | |
| Fax: | 630-792-5636 | |

Mail:    Office of Quality and Patient Safety
The Joint Commission
One Renaissance Boulevard
Oakbrook Terrace, IL 60181

Online:    www.jointcommission.org





Joint Commission Health Care
Staffing Services Certification

**STANDARD HIRING PRACTICES**

1. **THE FOLLOWING DOCUMENTATION COLLECTED AND RETAINED IN THE PERSONNEL FILE FOR <u>ALL</u> PERSONNEL:**

   A. <u>Picture Identification</u>: A photo I.D. from a reliable source.

   B. <u>Pre-Employment Screening Attestation</u>: All applicants are subjected to a 10-panel drug screen and otherwise tested in accordance with applicable regulatory requirements.

   C. <u>Criminal Background Investigation Attestation</u>: Employees are checked in a manner compliant with the requirements of Client and always in accordance with government regulations.

   D. <u>I-9</u>: Documentation and verification upon Pre-employment

   E. <u>Education</u>: Documentation of Education associated with profession/class. (Accepted if it is documented on the application)

   F. <u>Work History</u>: Documentation of work history associated with profession/class or as required by client. (Accepted if it is documented on the application)

   G. <u>References</u>: At least two satisfactory written or verbal references verifying work performance in applicable clinical areas.

2. **THE FOLLOWING DOCUMENTATION COLLECTED AND RETAINED IN THE PERSONNEL FILE FOR <u>CLINICAL</u> PERSONNEL:**

   A. <u>License Verification</u>: Primary Source On-Line Verification of the employee's license/certification verified with the state, unless the state does not offer verification.

   B. <u>Certifications</u>: C.P.R. card and/or other certifications (ACLS, PALS, etc.) as required by policy and client requirements.

   C. <u>Skills Inventory</u>: A comprehensive skills inventory appropriate to job classification and age-specific self-assessment.

   D. <u>OIG/GSA</u>: Automatically checked on all new hires and then approximately every 1-3 months thereafter.

   E. <u>Annual Training and Orientation</u>: Evidence of a yearly review of Fire & Safety, Infection Prevention, Hazardous Waste, Joint Commission Patient Safety Goals and OSHA and HIPAA Privacy and Security standards.

   F. <u>Health and TB Test</u>: Pre-employment health self-assessment. Upon hire, TB within the past year/or TB questionnaire and current clear chest x-ray. Other specific health requirements as directed by client or state health guidelines. Each applicant must have received the Hepatitis B vaccination series or have provided a declination.

   G. <u>Testing</u>: Documentation of applicants' competency tests for most clinical staffing areas. A passing grade of 80 percent or better must be obtained. Certain specialty areas and paraprofessional testing may be replaced with client interview or other evaluation.

3. **INTERVIEW, PLACEMENT AND ORIENTATION:**

   A. Prospective employees are interviewed by the branch director or designee. During the interview, emphasis is placed upon work history and clinical expertise.

   B. Information is provided to applicants regarding performance requirements, Favorite's policies and procedures and, in many cases, specific policies and procedures of client institutions.

   C. The assignment of employees is made with consideration for the skills and expertise of the employee, the needs of the client and ultimately the client's acceptance of the suitability of the employee to perform the duties of the assignment.

   D. Favorite Healthcare Staffing, Inc. assists its client institutions, as requested, with implementation of their orientation policies and procedures.

# EXHIBIT "B"

**Favorite Healthcare Staffing, Inc.**
7255 W 98th Terrace
Bldg 5, Suite 150
Overland Park, KS 66212

# STATEMENT

| Statement Date |
| --- |
| 08/18/2021 |

| CUSTOMER ID |
| --- |
| FAVORITE-54935 |

Page   1   of   2

| Bill To |
| --- |
| **Tackl Health** |

| Remit-To |
| --- |
| **Favorite Healthcare Staffing, Inc.**<br>7255 W 98th Terrace<br>Bldg 5, Suite 150<br>Overland Park, KS 66212<br>United States of America |

| Currency | Total Balance |
| --- | --- |
| USD | 78,397.94 |

## OPEN ITEMS

| Date | Type | Invoice Number | Description | Due Date | Invoice Amount | Amount Due | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 12/25/2020 | Invoice | Favorite-1252519 | Cleveland Hopkins Airport | 01/24/2021 | 1,044.75 | 1,044.75 | 1,044.75 |
| 01/01/2021 | Invoice | Favorite-1253828 | Cleveland Hopkins Airport 4241300 | 01/31/2021 | 306.00 | 306.00 | 1,350.75 |
| 01/08/2021 | Invoice | Favorite-1255084 | Cleveland Hopkins Airport 4241300 | 02/07/2021 | 58.70 | 58.70 | 1,409.45 |
| 01/22/2021 | Invoice | Favorite-1257738 | Takle Health 4241300 | 02/21/2021 | 10,526.95 | 10,526.95 | 11,936.40 |
| 01/29/2021 | Invoice | Favorite-1259117 | Cleveland Hopkins Airport 4241300 | 02/28/2021 | 10,035.80 | 10,035.80 | 21,972.20 |
| 02/05/2021 | Invoice | Favorite-1260533 | Takle Health 4241300 | 03/07/2021 | 13,162.12 | 13,162.12 | 35,134.32 |
| 02/12/2021 | Invoice | Favorite-1261898 | Takle Health 4241300 | 03/14/2021 | 10,064.30 | 10,064.30 | 45,198.62 |
| 02/19/2021 | Invoice | Favorite-1263199 | Takle Health 4241300 | 03/21/2021 | 4,746.99 | 4,746.99 | 49,945.61 |
| 02/26/2021 | Invoice | Favorite-1264587 | Takle Health 4241300 | 03/28/2021 | 2,560.30 | 2,560.30 | 52,505.91 |
| 03/05/2021 | Invoice | Favorite-1266044 | Takle Health 4241300 | 04/04/2021 | 3,978.39 | 3,978.39 | 56,484.30 |
| 03/12/2021 | Invoice | Favorite-1267552 | Takle Health 4241300 | 04/11/2021 | 118.97 | 118.97 | 56,603.27 |
| 03/19/2021 | Invoice | Favorite-1269019 | Takle Health 4241300 | 04/18/2021 | 186.46 | 186.46 | 56,789.73 |
| 03/26/2021 | Invoice | Favorite-1270487 | Takle Health 4241300 | 04/25/2021 | 273.80 | 273.80 | 57,063.53 |
| 04/09/2021 | Invoice | Favorite-1273494 | Takle Health 4241300 | 05/09/2021 | 461.29 | 461.29 | 57,524.82 |
| 04/16/2021 | Invoice | Favorite-1275050 | Takle Health 4241300 | 05/16/2021 | 563.23 | 563.23 | 58,088.05 |
| 04/23/2021 | Invoice | Favorite-1276637 | Takle Health 4241300 | 05/23/2021 | 668.75 | 668.75 | 58,756.80 |
| 04/30/2021 | Invoice | Favorite-1278259 | Takle Health 4241300 | 05/30/2021 | 769.44 | 769.44 | 59,526.24 |
| 05/14/2021 | Invoice | Favorite-1281397 | Takle Health 4241300 | 06/13/2021 | 1,941.76 | 1,941.76 | 61,468.00 |
| 05/21/2021 | Invoice | Favorite-1282978 | Takle Health 4241300 | 06/20/2021 | 1,071.53 | 1,071.53 | 62,539.53 |

| Statement Date |
| --- |
| 08/18/2021 |

| Customer ID |
| --- |
| Favorite-54935 |

## OPEN ITEMS

| Date | Type | Invoice Number | Description | Due Date | Invoice Amount | Amount Due | Balance |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 05/28/2021 | Invoice | Favorite-12845 84 | Takle Health 4241300 | 06/27/2021 | 1,172.26 | 1,172.26 | 63,711.79 |
| 06/04/2021 | Invoice | Favorite-12861 89 | Takle Health 4241300 | 07/04/2021 | 1,272.92 | 1,272.92 | 64,984.71 |
| 06/18/2021 | Invoice | Favorite-12892 69 | Takle Health 4241300 | 07/18/2021 | 1,474.28 | 1,474.28 | 66,458.99 |
| 06/25/2021 | Invoice | Favorite-12908 43 | Takle Health 4241300 | 07/25/2021 | 1,574.94 | 1,574.94 | 68,033.93 |
| 07/02/2021 | Invoice | Favorite-12924 41 | Takle Health 4241300 | 08/01/2021 | 1,703.52 | 1,703.52 | 69,737.45 |
| 07/09/2021 | Invoice | Favorite-12940 76 | Takle Health 4241300 | 08/08/2021 | 1,537.88 | 1,537.88 | 71,275.33 |
| 07/16/2021 | Invoice | Favorite-12957 11 | Takle Health 4241300 | 08/15/2021 | 1,623.22 | 1,623.22 | 72,898.55 |
| 07/23/2021 | Invoice | Favorite-12972 92 | Takle Health 4241300 | 08/22/2021 | 1,729.26 | 1,729.26 | 74,627.81 |
| 07/30/2021 | Invoice | Favorite-12989 17 | Takle Health 4241300 | 08/29/2021 | 1,832.88 | 1,832.88 | 76,460.69 |
| 08/06/2021 | Invoice | Favorite-13005 52 | Takle Health 4241300 | 09/05/2021 | 1,937.25 | 1,937.25 | 78,397.94 |